UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-20872-CIV-LENARD/GOODMAN

AMERICAN EMPIRE SURPLUS
LINES INSURANCE COMPANY,
A Foreign Corporation,

      Plaintiff,

v.

CHABAD HOUSE OF NORTH DADE, INC.,
A Florida Non-Profit Organization,
JOHN DOE and JANE DOE.

      Defendants.
_____/

## REPORT & RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a motion for summary judgment filed by Plaintiff American Empire Surplus Lines Insurance Company ("American Empire"). (DE# 36). The Honorable Joan A. Lenard referred this motion to Magistrate Judge William C. Turnoff, and Magistrate Judge Turnoff transferred the motion to me pursuant to Administrative Order 2010-79. (DE# 39, 44). I have considered the motion, the responses and replies, the pertinent portions of the record and the applicable law. For the reasons stated below, I recommend that the Plaintiff's motion be granted.

**II.**    **BACKGROUND**

This is a declaratory judgment action brought by an insurer, American Empire, against the insured, Chabad House of North Dade, Inc., ("Chabad") and two individuals, John Doe and Jane Doe ("the Does"), who are suing Chabad in state court. The insurer seeks a declaratory judgment that it has no duty to defend or indemnify the insured, Chabad, in the state court proceeding.[1] The parties agree that the relevant facts are those alleged in the Does' state court complaint (DE# 36-1) and that the motion hinges on

---

[1] The state court case, Case No.: 08-30553 CA 02, is pending in the Circuit Court of the 11th Judicial Circuit for Miami-Dade County, Florida (DE# 36-1). The insurance policy is found at DE# 36-2 and 36-3.

construction of the insurance policy. The Court has diversity jurisdiction and applies Florida law to interpret the insurance contract.

Chabad-Lubavitch is an international Jewish organization that trains rabbis to establish local congregations throughout the world. The congregations are known as "Chabads," and Defendant Chabad House of North Dade, located in Aventura, Florida, is a local Chabad-Lubavitch congregation.

Chabad participated in a program called Friendship Circle, whose purpose was for Chabad to connect with the families of children with special needs in the larger Jewish community. The program was designed for Chabad to befriend families with special needs children by sending teenage members of the Chabad movement to their homes. Chabad intended the teenagers to provide the parents of special needs children with a respite from attending to their children's needs and simultaneously promote the Chabad-Lubavitch movement by inspiring and motivating the special needs families.

That is not what happened in this case.

According to the allegations in the underlying state court lawsuit, the Does's son, "J.D.," an 11-year-old living with his parents, was cruelly victimized by two teenagers participating in the Friendship Circle program. While at J.D.'s home, the teenagers tormented J.D. by restraining him against his will, taping his mouth shut, and locking him in the bathroom. The teenagers also touched and slapped J.D.'s penis, sprayed bug spray on J.D.'s body and penis, and instructed J.D. to perform various lewd acts. They also told J.D. that his mother, who had been diagnosed with breast cancer, would soon die.

The Does sued Chabad for negligence in state court. The Does claim that Chabad was negligent when it failed to train and properly select the volunteers who participated in the Friendship Circle program. The Does further allege that Chabad negligently misrepresented that its volunteers were professionally and specially trained to deal with special needs children and negligently failed to warn the Does that the teenage volunteers lacked training or oversight.

In support of its position that it has no duty to defend or indemnify Chabad in the state court action, the insurer relies on two clauses in the insurance contract. One clause excludes coverage for injuries arising out of abuse or molestation. The other limits coverage to injuries arising out of operations necessary or incidental to the insured's

premises. The Does and Chabad contend that the abuse or molestation exclusion does not apply to the negligence claims against Chabad itself and that the limitation to designated premises endorsement should be construed to cover injuries arising out of operations necessary or incidental to Chabad's *business*.

## II.     LEGAL STANDARDS

### a.   Summary Judgment

An insurer may seek a declaratory judgment as to its duty to defend or indemnify even when the insured's liability has not yet been determined. *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5 (Fla. 2004). When the insurer's duty "to pay defense costs rests upon the legal effect of the provisions of an insurance contract, the interpretation of the contract is a matter of law for the Court to determine, and is therefore appropriate for summary judgment." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991) (citing *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985)). The parties agree that the relevant, undisputed facts are those alleged in the Does' state court complaint and that the insurer's entitlement to summary judgment rests upon construction of the insurance policy.

### b.   Duty to Defend

An insurer's duty to defend is broader than its duty to indemnify. *Reinman, Inc. v. Preferred Mut. Ins. Co.*, 513 So. 2d 788, 789 (Fla. 3d DCA 1987). If one claim alleged in the complaint is covered by the insurance policy, then the insurer must defend the entire complaint, including claims not covered by the policy. *Mactown, Inc. v. Contintenal Ins. Co.*, 716 So. 2d 289, 292 (Fla. 3d DCA 1998). However, when the complaint shows either the non-existence of coverage or the applicability of a policy exclusion, no obligation to defend arises. *Federal Ins. Co. v. Applestein*, 377 So. 2d 229, 231 (Fla. 3d DCA 1979).

In determining whether coverage exists, courts must look to the facts alleged in the complaint against the insured and determine whether the allegations potentially bring the suit within the policy's converge. *Jones v. Florida Ins. Guar. Ass'n*, 908 So. 2d 435, 442 (Fla. 2005); *MCO Envtl. v. Agric. Excess & Surplus Ins. Co.*, 689 So. 2d 1114, 1116 (Fla. 3d DCA 1997). "Although ambiguous exclusionary provisions in insurance policies are to be construed in favor of the insured, a court cannot rewrite an insurance contract to

extend coverage beyond what is *clearly set forth in the contractual language*." *Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron*, 721 So. 2d 825, 826 (Fla. 3d DCA 1998) (emphasis added). The courts' role is to provide "a reasonable, practical and sensible interpretation consistent with the intent of the parties." *United States Fire Ins. Co. v. Pruess*, 394 So. 2d 468, 470 (Fla. 4th DCA 1981).

## II.  ANALYSIS

The allegations in the Does' underlying state court complaint present a disturbing scenario which naturally generates sympathy for the Does and their minor, special needs child. Nevertheless, the insurance coverage analysis must be limited to the allegations in the complaint and the terms of the insurance contract.

The insurer argues that the Does' state court claims against Chabad are barred from coverage by two separate provisions in the insurance contract: (1) the exclusion for claims arising out of abuse or molestation and (2) the endorsement limiting coverage to the designated premises. If *either* argument is accepted, the insurer has no duty to indemnify or defend Chabad in the state court action.

### a.  The Abuse or Molestation Exclusion Bars Coverage

Chabad's policy contains an endorsement entitled "**ABUSE OR MOLESTATION EXCEPTION,**" which provides that:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of
>
> 1  The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> 2  The negligent
>    a  Employment,
>    b  Investigation,
>    c  Supervision,
>    d  Reporting to the proper authorities, or failure to so report, or
>    e  Retention,
>    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1 above[.]

The parties agree that there are no Florida state court cases construing an abuse or molestation exception. The Florida Supreme Court, however, has provided substantial guidance in this matter.

4

Interpreting general liability insurance policies in a suit against firearms manufacturers, the Florida Supreme Court said that the term "arising out of" was unambiguous and meant "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with." *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005) (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996). To arise out of an event or occurrence, a "but for" or "proximate cause" relationship is not necessary. Instead, a claim arises out of an event or occurrence when there is some causal connection or relationship beyond pure coincidence. *Taurus*, 913 So. 2d at 539; *Race v. Nationwide Mut. Fire Ins. Co.*, 542 So. 2d 347, 348, 351 (Fla. 1989); *Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 657 So. 2d 925, 927 (Fla. 1st DCA 1995). Under the Florida Supreme Court's broad reading of the phrase "arising out of," the negligence claims against Chabad clearly arose out of the teenagers' actual or threatened abuse or molestation.

Even prior to *Taurus*, a federal court in this district reached the same conclusion in barring negligence claims based on a similar clause. In *Casualty Indemnity Exchange v. Small Fry, Inc.*, 709 F. Supp. 1144, 1146 (S.D. Fla. 1989), the district court found that a similar provision excluding coverage for "any claim, demand or cause of action arising out of or resulting from either sexual abuse or licentious behavior" barred coverage for negligence claims arising out of the alleged sexual molestation. Specifically, the district court found that this exclusion also barred claims against the insured for negligent supervision, failure to provide adequate and competent personnel, and failure to provide proper medical care.

The Eleventh Circuit's recent unpublished opinion in *Century Surety Company v. Seductions, LLC*, No. 09-12126, 2009 F. App'x. 455 (11th Cir. Oct. 19, 2009), similarly favors a broad reading of this policy exclusion.[2] In *Seductions*, the insurance company

---

[2] Neither the Federal Rules of Civil Procedure nor the Local Rules for the Southern District of Florida have rules governing the use of unpublished opinions. Nevertheless, Federal Rule of Appellate Procedure 32.1 (Citing Judicial Dispositions) provides, in subsection (a), that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been"

5

sought a declaratory judgment that it was only liable for $25,000 under the policy's assault and battery limitation, instead of the general policy limit of $2 million.  A customer at the insured's nightclub sued the insured in state court for negligent hiring, retaining, training, and supervising of employees who assaulted the plaintiff.  Relying on *Taurus*, the Eleventh Circuit found the clause limiting coverage for "loss *arising from* an assault and battery" also capped claims for negligence against the employer because the negligence claims arose out of the same incident.  *Id.* at 456 (emphasis added).  Rejecting the customer's argument that the injuries arose out of the nightclub's negligence instead of the intentional torts, the court commented that the customer's "artful pleading of claims sounding in negligence does not change the fact that [his] injuries arose directly from an allegedly intentional attack."  *Id*. at 458.

Florida's district courts of appeals have similarly construed negligence claims in analogous situations as arising out of an underlying assault and battery, notwithstanding the victim's attempt to plead negligence against the employer.  *Miami Beach Entm't v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161 (Fla. 3d DCA 1996) (disregarding the plaintiff's strategic choice to allege negligence against the bar owner for failing to keep control over its patrons and focusing instead on the practical fact that the injuries arose from an assault and battery at the bar); *Britamco Underwriter's, Inc. v. Zuma Corp.*, 576 So. 2d 965 (Fla. 5th DCA 1991) (holding that assault and battery exclusion applied despite patron's legal theory that the employer negligently failed to provide adequate security).

Under Florida law, therefore, the court must examine the actual conduct giving rise to the injury -- not the legal theory on which the claim is based -- to determine whether the exclusion applies.  According to the Florida Supreme Court's expansive reading of the phrase "arising out of" in *Taurus*, the Does' state court negligence claims against Chabad are not covered under the insurance policy because they are connected with, and therefore arose out of, the teenagers' threatened or actual abuse/molestation.

---

(i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and (ii) issued on or after January 1, 2007.

Consistent with Rule 32.1, Eleventh Circuit Rule 36-2, entitled "Unpublished Opinions," provides, in pertinent part, that "[unpublished] opinions are not considered binding precedent, but they *may be cited as persuasive authority*." (emphasis added).

6

Chabad, relying on *Saint Paul Fire & Marine Insurance, Co. v. Schrum*, (8th Cir. 1998), argues that Chabad's own misrepresentations regarding the program to J.D.'s parents were the "but for" cause of J.D.'s injuries. Therefore, Chabad contends, the abuse and molestation exclusion does not bar coverage. But *Schrum*, which relied on Missouri case law, is clearly contrary to the Florida law outlined above. Under Florida law, "but for" causation is not required to trigger "arising out of" language in insurance policies.[3]

In attempting to avoid the abuse and molestation exclusion, the Does make two slightly more sophisticated arguments, but neither argument is ultimately persuasive.

First, the Does argue that some of the teenagers' alleged torts, such as intentional infliction of emotional distress or false imprisonment, do not clearly constitute abuse or molestation.

As an initial matter, the policy term *actual or threatened abuse* should not be so narrowly construed that it restricts itself to certain torts (such as battery) but not others (such as false imprisonment). The more logical and better-reasoned approach is to consider this phrase as excluding claims arising out of any intentional maltreatment. *See* BLACKS LAW DICTIONARY 11 (9th ed. 2009) (defining abuse to include (1) a departure from reasonable use in dealing with a person, (2) to injure physically or mentally, or (3) to hurt or injure a child); *cf. American Commerce Ins. Co. v. Porto*, 811 A.2d 1185, 1199 (R.I. 2002) ("'the actual, alleged, or threatened sexual molestation of a person' is not ambiguous as it was used in this policy"); *Community Action for Greater Middlesex Cnty., Inc. v. American Alliance Ins. Co.*, 757 A.2d 1074, 1083 (Conn. 2000) (policy language "excluding abuse and molestation from coverage is clear and unambiguous").

Morever, unlike the exclusion at issue in *Small Fry* and many other cases, the exclusion here is broader than "*sexual* abuse." 709 F. Supp. at 1146 (emphasis added). Instead, as described above, it excludes four broad categories of conduct: actual abuse,

---

[3] Not only is *Schrum* not binding on Florida courts, but several other courts have rejected its analysis of the "arising out of" language. *See, e.g.*, *Philbrick v. Liberty Mut. Fire Ins. Co.*, 934 A.2d 582 (N.H. 2007) (affirming summary judgment in insurer's favor); *Allstate Ins. Co. v. Bates*, 185 F. Supp. 2d 607, 613 (E.D.N.C. 2000) ("explicitly" rejecting *Schrum*'s conclusion that the sexual abuse was "merely incidental" to the negligent supervision claim and explaining that "[w]ithout the molestation there would be no injury and thus, no basis for the negligence claim").

7

threatened abuse, actual molestation and threatened molestation. The "abuse or molestation" exclusion here is identical to the exclusion involved in *Community Action,* where the Connecticut Supreme Court, in affirming a summary judgment in favor of the insurer, disagreed with the premise that the conduct "must have been sexually motivated in order to constitute abuse or molestation within the meaning of the policy exclusion." 757 A.2d at 1083.

In any event, because the policy explicitly applies only to "bodily injury" or "property damage" and further defines "bodily injury" as "injury, sickness or disease sustained by a person, including death resulting from any of these at any time," no coverage can exist for false imprisonment or emotional distress. *See Anderson v. Southern Guar. Ins. Co.*, 508 S.E.2d 726, 729 (Ga. Ct. App. 1998) (intentional infliction of emotional distress claim not covered by policy that defines "bodily injury" as "bodily harm, sickness or disease"). Therefore, the first of the Does' arguments is unpersuasive because it does not clear the first hurdle of establishing that the claims are even covered under the policy in the first place.

The Does' second argument is somewhat more complex but is still unpersuasive. The Does contend that because paragraph 1 of the abuse and molestation exclusion appears, under the Plaintiff's interpretation, to bar claims for negligence against Chabad, it renders paragraph 2's exclusion of coverage for negligent hiring, investigation, supervision, reporting, and retention superfluous. The Does ask: if paragraph 1 is broadly interpreted to preclude negligence claims against an employer based on an employee's abuse or molestation, when would paragraph 2 ever apply? Therefore, the Does reason, paragraph 2 must govern claims against Chabad and paragraph 2 does not exclude negligence claims predicated on misrepresentation or failure to warn theories. This argument fails for several reasons.

"As 'a general rule, the use of a disjunctive [clause] indicates alternatives and requires that those alternatives be treated separately. Hence, language in a clause following a disjunctive is considered inapplicable to the subject matter of the preceding clause.'" *Brown v. Budget Rent-A-Car Sys.*, 119 F.3d 922 (11th Cir. 1997) (quoting *Quindlen v. Prudential Ins. Co. of Am.*, 482 F.2d 876, 878 (5th Cir.1973)). Because under Florida law it is clear that the negligence claims **arose** out of the abuse or

8

molestation, paragraph 1 of the exclusion bars coverage and it is unnecessary to consider paragraph 2 in resolving the coverage issue.

The most probable explanation for paragraph 2's presence is that the insurer included it in an abundance of caution because -- despite the Florida Supreme Court's expansive interpretation of the term *arising out of* -- there is no binding Florida case law on this specific exclusion. The inclusion of paragraph 2 thus ensures that there will not be coverage even if a court determines, as in *Schrum*, that the injury arose of out the employer's negligence (instead of the abuser/molester's conduct). Thus, paragraph 2 does not limit the scope of paragraph 1, but rather *independently* bars coverage in cases where a court determines that paragraph 1 is inapplicable. Read in this context, paragraph 2 is not superfluous at all.

Moreover, the Defendants have not cited any case finding an abuse or molestation clause to be ambiguous, while numerous courts have found such clauses clear and unambiguous. *See, e.g.*, *McAuliffe v. Northern Ins. Co. of N.Y.*, 69 F.3d 277, 279 (8th Cir. 1995); *Mount Vernon Fire Ins. Co. v. Hicks*, 871 F. Supp. 947, 951-52 (E.D. Mich. 1994); *Community Action*, 757 A.2d at 1082-83. Additionally, the Defendants' reading of paragraph 2 to limit the bar on coverage provided by paragraph 1 would contravene an established principle in Florida insurance law that "exclusionary clauses cannot be relied upon to create coverage." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1074 (Fla. 1998).

By illustration, in *La Marche v. Shelby Mutual Insurance Co.*, 390 So. 2d 325, 326 (Fla. 1980), the Florida Supreme Court considered a clause that excluded coverage

> to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply* to a warrant of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.

(emphasis added).

*La Marche* found, however, that this "exclusion within an exclusion" did not render the policy ambiguous or create coverage for damages arising from a breach of warranty of fitness or a failure to perform work in a workmanlike manner. The Does similarly may not rely on an exclusion to create coverage which the policy does not otherwise provide.

9

### b. The Limitation to Designated Premises Endorsement Bars Coverage

The insurance policy also contains a limitation to designated premises endorsement. This endorsement list the premises as "21001 BISCAYNE BLVD, AVENUTRA, FL 33180" and provides in relevant part that the insurance policy applies only to bodily injury, property damage, personal and advertising injury and medical expenses "arising of out [t]he ownership, maintenance or use of the premises . . . and operations necessary or incidental to those premises."

The Defendants do not dispute that the injuries to J.D. were inflicted at his home, not at the address designated in the policy. Instead, the Defendants argue that *operations necessary or incidental to the premises* is ambiguous and should be construed to include operations necessary or incidental to Chabad's *business*. For support, Defendants cite *Southeast Farms v. Auto-Owners Insurance Co.*, 714 So. 2d 509, 512 (Fla. 5th DCA 1998), which found identical policy language ambiguous, and held that the term *necessary or incidental to those premises* included "the business operated on the premises." *Southeast Farms* noted that policy at issue was, as here, a *general* liability policy, not a *premises* liability policy, and based its holding largely on that ground.

In response to this argument, American Empire cites *Union American Insurance Co. v. Haitian Refugee Center Inc.*, 858 So. 2d 1076, 1078 (Fla. 3d DCA 2003), which, contrary to *Southeast Farms*, found that identical language clearly limited coverage to activities necessary or incidental to the **premises** and reversed the trial court for substituting "business" for "premises." *Union American* distinguished *Southeast Farms* by noting that the insurance company there *conceded* that the term premises meant business. As the *Southeast Farms* court noted:

> Auto-Owners' assertion and citation to *Nguyen*'s definition of incidental is **surprising** since the policy language at issue in *Nguyen* was so clearly different from the policy language at issue here. The *Nguyen* policy specifically covered operations necessary or incidental *to the business;* here, the policy does not include an express business reference. **Auto-Owners' adoption of the definition of "incidental" as including incident to the business purpose pretty much gives the ball game away**.

714 So.2d at 511 n.3 (first and third emphasis added).

Absent a persuasive showing that the Florida Supreme Court would decide otherwise, decisions of Florida's district courts of appeals are binding on a federal court

sitting in diversity. *Somer v. Johnson*, 704 F.2d 1473, 1477 (11th Cir. 1983). Because the insurance company in *Southeast Farms* conceded the point that "premises" meant "business," only the Third District Court of Appeal's unambiguous holding in *Union American* is directly on point and should be viewed as binding authority.

*Union American*'s interpretative method is also in keeping with the Florida Supreme Court's own approach in insurance cases. *Union American* looked to the policy language itself, rather than to titles and headings, to determine the extent of coverage. The Florida Supreme Court has repeatedly emphasized that terms in insurance contracts are to be given their plain meaning. *Penzer v. Transportation Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). Plainly, "premises" does not mean "business." The endorsement limiting coverage to designated premises "effectively convert[s] the [commercial general liability] policy into the equivalent of a" premises policy. *Union Am.*, 858 So. 2d at 1078 n.1.

The endorsement's limitation to injuries *arising out of the **ownership, maintenance or use** of the premises shown* clearly contemplates a connection to the physical address, and the additional language, *operations necessary or incidental to the premises*, logically extends coverage to off-premise activities necessarily related to premise operations. *See On Air Entm't Corp. v. National Indem. Co.*, 210 F.3d 146, 148, 152 (3d Cir. Pa. 2000) (injuries sustained by rape victims of insured's employee not covered under policy when rapes occurred off premises); *Home Ins. Co. v. Phillips*, 815 F. Supp. 1471, 1474 (S.D. Fla. 1993); (injuries sustained during plane crashed barred by limitation to premises endorsement because "the actions taken on the premises were not an immediate cause of the defendants' injuries"); *Parliament Ins. Co. v. Bryant*, 380 So. 2d 1088 (Fla. 3d DCA 1980) (injuries sustained during off-premise boat ride not covered under similar language). Under the alternative reading urged by Defendants and adopted by *Southeast Farms* -- replacing "premises" with "business" -- it is not clear what effect, if any, this limitation of coverage provision would have.[4]

---

[4] Courts in some other jurisdictions have adopted the interpretation urged by the Defendants. *See, e.g.*, *American Guar. and Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 807-08 (5th Cir. 1997) (applying Mississippi law); *Gilbert v. United Fire & Cas. Co.*, No. 07-cv-00471-LTB, 2007 WL 3274428, at *5 (D. Colo. Nov. 5, 2007) (applying Colorado law); *Kisiel v. Mill Valley Ins. Services, Inc.*, No. A099767, 2003 WL

### III. CONCLUSION

Both the abuse and molestation exclusion and the limitation to designated premises endorsement bar coverage of the Does' state court negligence claims against Chabad. The insurer is entitled to a declaratory judgment that it has no duty to defend or indemnify Chabad in the state court action.

### IV. RECOMMENDATION

I recommend that the Plaintiff's motion for summary judgment be granted.

### V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Each party may file a response to the other party's objection within 14 days of the objections. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this report and bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

RESPECTFULLY RECOMMENDED in Chambers, at Miami, Florida, this 4th day of October, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Joan A. Lenard
All counsel of record

---

22977589, *4 (Cal. Ct. App. Dec. 19, 2003); *Henry ex rel. Weis v. Gen. Cas. Co. of Wis.*, 593 N.W. 2d 913, 919 (Wis. Ct. App. 1999). These cases, however, are contrary to the Florida appellate courts' holdings in *Union American* and *Bryant*, and, as explained above, effectively nullify the limitation to designated premises endorsement. But, even if we were to follow these contrary, out-of-Florida opinions, American Empire would still be entitled to summary judgment under the "abuse or molestation" exclusion.