**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 10-20872-CIV-LENARD/GOODMAN

**AMERICAN EMPIRE SURPLUS
LINES INSURANCE COMPANY,**

    Plaintiffs,

vs.

**CHABAD HOUSE OF NORTH
DADE, INC., JOHN DOE AND JANE
JOE,**

    Defendants.
_____/

**ORDER ADOPTING IN PART AND OVERRULING IN PART REPORT OF
MAGISTRATE JUDGE (D.E. 50) AND GRANTING DEFENDANT AMERICAN
EMPIRE SURPLUS LINES INSURANCE COMPANY'S MOTION TO FOR
SUMMARY JUDGMENT (D.E. 36)**

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Jonathan Goodman ("Report," D.E. 50), issued on October 4, 2011, recommending that Plaintiff American Empire Surplus Lines Insurance Company's ("American Empire") Motion for Summary Judgement (D.E. 36) be granted. On October 20, 2011, Defendants John and Jane Doe (the "Does") filed objections to the Report ("Objections," D.E. 51) which were subsequently adopted by Defendant Chabad House of North Dade, Inc. (collectively, "Defendants").[1] American Empire filed its Response to the Objections ("Response," D.E.

---

[1] Notice of Adoption (D.E. 53), filed on October 21, 2011.

56) on November 1, 2011.[2] Upon *de novo* review of the Report, Objections, Response and the record, the Court finds as follows.

## I.     Factual and Procedural Background

This case involves the interpretation of an insurance policy issued by American Empire to Defendant Chabad House of North Dade, Inc. ("Chabad House"). The underlying state court claim that gives rise to American Empire's action for declaratory judgment involves troubling allegations of abuse.[3]

Defendant Does are the parents of a special needs child, "J.D," who lives with them. Through a program called Friendship Circle, Chabad House sent two of its teenage members, Soloman Gicherman and Ariel Levy, to the Does' home in order to "motivate, befriend and enrich" J.D. while providing his parents with brief respite from caring for his everyday needs.

Rather than motivate, befriend or enrich the eleven-year old J.D., the teenagers tormented him physically and emotionally. They restrained him against his will, taped his mouth shut, locked him in a bathroom, touched and slapped J.D's penis, sprayed bug spray on his body and penis and instructed him to perform lewd acts. They also told J.D. that his mother had been diagnosed with breast cancer and would soon die. To keep their torture a secret, the teenagers threatened J.D. with physical violence and death if he told anyone.

---

[2]     American Empire also filed a Notice of Filing Supplemental Authority in Support (D.E. 57), on November 16, 2011. The Court will consider the attached authority, *TIG Insurance Co. v. Martin*, 2003 WL 25796732 (E.D.N.Y. Feb. 23, 2003), as Defendants have not objected to its filing.

[3]     *See generally*, Am. Compl., D.E. 36-1.

The Does sued Chabad House for negligence in state court. They claim that Chabad House was negligent in selecting and training the Friendship Circle volunteers. They also claim that Chabad House negligently misrepresented that its volunteers were properly trained to deal with special needs children and failed to warn the Does that the teenage volunteers lacked training or supervision.

American Empire filed the instant action on March 22, 2010, seeking declaratory judgment that no coverage exists under its policy for the claims asserted by the Does against Chabad House and that American Empire has no duty to defend or indemnify Chabad House in the state court action. (*See* Compl. ¶¶ 29-34.) American Empire bases its claim on two clauses in the insurance contract: the abuse or molestation exclusion and the limitation of coverage to designated premises or project. (*Id*. ¶¶ 25-28.)[4] The parties agree that the facts

---

[4] The "**ABUSE OR MOLESTATION EXCEPTION**" provides that:
The insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of
1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
2. The negligent
   a   Employment,
   b   Investigation,
   c   Supervision,
   d   Reporting to the proper authorities, or failure to so report, or
   e   Retention,
of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1 above[.]

The "**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**" states:
This insurance applies only to "bodily injury", "property damage", personal and advertising injury" and medical expenses arising out of:
1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

3

of this case are not in dispute. (*See* Corrected Mot. for Summary J. at 2-7, D.E. 36; Defs.' Opp. at 2, D.E. 37.) Rather, the parties acknowledge the only dispute is over the legal import of the terms of American Empire's insurance policy. (Defs.' Opp. at 2.)

### A.     The Report

In his Report, Magistrate Judge Goodman finds that both the abuse or molestation exclusion and the limitation to designated premises endorsement bar American Empire's coverage of the state court negligence claims against Chabad House and recommends granting summary judgment in favor of the insurer. (Report at 12.)

The Report construes the Does' claims as "arising out of" the teenagers' actual or threatened abuse or molestation. (*Id*. at 5, citing *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So. 2d 528 (Fla. 2005).) It does so by examining the conduct which gave rise to J.D.'s injuries, notwithstanding the Does' attempt to plead their claims against Chabad House in negligence. (*Id*., citing *Miami Beach Entm't v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161 (Fla. 3d DCA 1996).) The Report dismisses the Does' argument that some of the teenagers' alleged intentional torts did not clearly constitute abuse or molestation. (*See id.* at 7-8.) The Magistrate Judge also declines to adopt the Does' interpretation of the abuse or molestation clause in which paragraph 2 but not paragraph 1 would apply to their negligent misrepresentation and failure to warn claim. (*See id.* at 8-10.)

As to the designated premises endorsement, the Report finds the language "operations necessary or incidental to the premises" is not ambiguous and does not include operations

---

2.     The project shown in the Schedule.

necessary or incidental to Chabad House's business. (*See id.* at 10.) The Report follows *Union American Insurance Co. v. Haitian Refugee Center, Inc.*, 858 So. 2d 1076 (Fla. 3d DCA 2003), where the state court dealing with similar language in an insurance contract refused to substitute "business" for "premises." (*Id.*, citing *Union American Ins. Co.*, 858 at 1078.) The Report distinguishes the Does' preferred authority, *Southeast Farms v. Auto-Owners Insurance Co.*, 714 So. 2d 509 (Fla. 5th DCA 1998), where the policy in dispute was a general liability policy – unlike the premises liability policy here – and the insurance company "surprisingly" conceded that "premises" meant "business." (*Id.*, citing *Southeast Farms*, 714 So. 2d at 511 n.3, 512.)

### B.     Defendants' Objections

Defendants take issue with the Magistrate Judge's findings and recommendations and urge this Court to decline to follow the Report, instead requiring American Empire to defend Chabad House in the state court action.[5]

Among their main contentions, Defendants argue that the language "arising out of" creates ambiguity via its interaction with other policy language. (Objections at 3, citing *Taurus Holdings*, 913 So. 2d at 533.) Specifically, the interplay of paragraphs 1 and 2 of the abuse or molestation exclusion creates ambiguity. (*See id.*) Defendants continue this argument by citing rules of insurance policy construction: (1) each provision of the policy

---

[5]     The Does request the same relief in their Opposition to Plaintiff's Motion for Summary Judgment (D.E. 37). It is not necessary to construe this Opposition as a cross motion for summary judgment; pursuant to Federal Rule of Civil Procedure 56(f), the Court may grant summary judgment for the non-movant Defendants, if appropriate.

must be construed in relation to the whole and (2) where policy language has two or more reasonable interpretations, it is ambiguous and must be construed in favor of coverage. (*See id.* at 4, citing *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993) and *Taurus Holdings*, 913 So. 2d at 532.)  Defendants claim that these rules of construction were misapplied in the Report and that another reasonable interpretation of the abuse or molestation exclusion is that paragraph 1 applies when the claim is based on the abuse itself or vicarious liability, while paragraph 2 applies when the claim is based on enabling negligence, such as negligent hiring or retention. (*See id.* at 5.)  Multiple viable interpretations create the ambiguity which in turn requires this Court to construe the policy in favor of coverage.  (*See id.*)  Furthermore, Defendants cite a third rule of construction: exclusions to coverage must be construed more strictly against the insured than other policy provisions.  (*See id.* at 6, citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000.)

Second, Defendants object to the Report's finding that the designated premises endorsement bars coverage. (*See id.* at 6-9.)  They argue that the policy at issue is a general commercial liability policy and not merely a premises liability policy. (*See id.* at 6.)  This is evidenced by its coverage territory (United States, Puerto Rico and Canada), coverage for bodily injury "occurring away from the premises [Chabad House] own[s] or rent[s]," and coverage for torts such as libel and slander that are not tied to the premises.  (*Id*. at 7 (citations omitted).)

Per the Defendants' analysis, the Magistrate Judge erroneously followed *Union

6

*American Insurance Co.* instead of *Southeast Farms*. (*See id.* at 8-9 (citations omitted).) *Southeast Farms* contained a designated premises provision in what appeared to be a general commercial policy. (*See id.* at 9. (citation omitted).) This provision would have nullified coverage in the policy for "advertising injury," and therefore was found to create an ambiguity. (*See id.* (citation omitted).) In light of this ambiguity, the Florida appellate court in *Southeast Farms* construed the disputed policy to find coverage, just Defendants entreat the Court to do in the instant case.[6]

## II. Discussion

Under Florida law, interpretation of an insurance contract, including determination and resolution of ambiguity, is a matter of law. *Sproles v. American States Ins. Co.*, 578 So. 2d 482, 484 (Fla. 5th DCA 1991); *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir.1985). The parties agree that the underlying facts in this action are not in dispute, therefore this case is ripe for resolution at the summary judgment stage. *See* FED. R. CIV. P. 56(c) (summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also* FED. R. CIV. P. 56(f) (non-movant may be awarded summary judgment upon the Court's own initiative provided the Court gives the parties reasonable notice and time to respond). Mindful that its task is to interpret the meaning

---

[6] American Empire's Response to Defendants' Objections essentially supports the Magistrate Judge's findings, legal reasoning and recommendations. For the sake of brevity, the summary of the Response is omitted.

of the insurance contract and not re-write it, the Court begins its analysis with the abuse or molestation clause. *See State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986) ("Courts may not rewrite contracts or add meaning to create an ambiguity.").

### A.     The Abuse or Molestation Exclusion Bars Coverage

Paragraph 1 of the abuse or molestation exclusion provides that American Empires insurance coverage does not apply to bodily injury "arising out of [t]he actual or threatened abuse or molestation . . ." (Abuse or Molestation Exclusion, D.E. 1 at 47.)  As correctly noted by the Magistrate Judge, the term "arising out of" is unambiguous under Florida law; it means "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with." *Taurus Holdings*, 913 So. 2d at 539; *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996).)  "But for" or "proximate cause" is not required. *See Taurus Holdings*, 913 So. 2d at 539.  The Does' pleading of their claims in negligence (failure to train, failure to warn) does not change the fact that J.D.'s injuries arose directly from actual or threatened abuse. *See Century Surety Co. v. Arana-Landeros*, 349 Fed. Appx. 455, 458 (11th Cir. 2009); *see also Miami Beach Entm't*, 682 So. 2d at 162 ("Although the complaint was couched in terms of the bar owner's negligence . . . for purposes of determining insurance coverage, the injuries arose from the assault and battery."); *Britamco Underwriter's, Inc. v. Zuma Corp.*, 576 So. 2d 965, 965 (Fla. 5th DCA 1991).  Under the Florida Supreme Court's broad reading of the

phrase "arising out of," the Does' claims against Chabad House squarely arose out of the teenagers' actual or threatened abuse.[7]

The question then is what, if any, ambiguity is created by reading together both paragraphs of the abuse or molestation exclusion?

The Report finds it probable that the insurer included both paragraphs in an abundance of caution while the Does suggest that paragraph 1 applies when the claims are for the abuse itself or vicarious liability while paragraph 2 applies when the claims are based on the insured's enabling negligence (e.g., negligent hiring or retention). (*Compare* Report at 9 *with* Objections at 5.) They base this alternative, "reasonable" interpretation on the seeming overlap of exclusions created by the first and second paragraphs.[8] The Does fail to cite any law in support of their argument that overlapping clauses require an alternative interpretation of the excluding language. Nevertheless, the Does claim that the exclusion's susceptibility to both of these interpretations means that it is ambiguous as a matter of law and any ambiguity must be resolved against the insurer. *Daleo v. Bert and Bette Bayfront 66 Marine*, 273 So.2d 113 (Fla. 3d DCA 1972).

---

[7] The Does do not object to this finding in the Report. "If the only issue was whether, under Florida law, the Does' claims arise out of the conduct of Gicherman and Levy, the answer would be yes and that would be that." (Objections at 2-3.) Nor do the Does object to the Report's finding that the teenagers' alleged torts clearly constitute actual or threatened abuse or molestation. (*See* Report at 7-8.)

[8] "If American Empire believed that all claims for injuries caused by acts of abuse or molestation "arose out of" those acts, irrespective of whether they were based on the enabling negligence of someone other than the abuser, then there was no need for a second paragraph listing various kinds of enabling negligence that might also give rise to an abuse claim and excluding those from coverage as well." (Objections at 5.)

For guidance, the Court must turn to the principles of contract interpretation developed by Florida state courts. *See Littell v. Law Firm of Trinkle*, 345 Fed. Appx. 415, 418 (11th Cir. 2009) (a federal court sitting in diversity must apply Florida law to state law claims).

First, whenever possible, a contract must be construed according to its plain language. *Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A.*, 771 So. 2d 628, 631 (Fla. 4th DCA 2000). Looking at the plain language of the abuse or molestation provision, the Court notes the disjunctive "or" between the paragraphs. The Court finds persuasive the Eleventh Circuit's guidance regarding the disjunctive in *Brown v. Budget Rent-A-Car Systems, Inc.*:

> As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately. Hence, language in a clause following a disjunctive is considered inapplicable to the subject matter of the preceding clause.

119 F.3d 922, 924 (11th Cir. 1997) (citing *Quindlen v. Prudential Ins. Co. of America*, 482 F.2d 876, 878 (5th Cir. 1973), for guidance in construing the disjunctive clause in a statute) (internal quotations omitted). Thus, paragraphs 1 and 2 of the abuse or molestation exclusion serve as separate and independent bases to exclude coverage. Paragraph 2 cannot be read as providing an alternative exclusion that consciously skirts the contours of paragraph 1's excluded acts.

Moreover, paragraph 2's reference to paragraph 1 ("and whose conduct would be excluded by Paragraph 1 above") suggest the insurer's contemplation of the former

10

paragraph in drafting the latter. This is further reason for the Court to leave undisturbed the provisions which comprise the clause.

The Does' proposed interpretation would require the Court to construe each paragraph of the abuse and molestation exclusion with conditional language (*e.g.*, "...when the claim arises out of actual abuse or vicarious liability..." and "when the claim is based on the insured's enabling negligence...") as well as modify or ignore the disjunctive relationship between the two paragraphs. "Such a restructuring . . . would do violence to the contract language and would be in violation of the established grammatical rules of construction." *Prudential Ins. Co. Of America v. Bellar*, 391 So. 2d 737, 738 (Fla. 4th DCA 1980) (citation omitted) (rejecting an interpretation that would require rearrangement of clauses, change of disjunctive to conjunctive and deletion of a clause).

A second rule of construction, which the Does tips in their favor, is that "when construing an insurance policy to determine coverage[,] the pertinent provisions should be read in *pari materia*." *State Farm Fire and Casualty Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1075 (Fla. 1998); *see also* Fla. Stat. Ann. § 627.419(1) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.") The Does, however, fail to cite other provisions of the policy with which the abuse and molestation exclusion should be read in conjunction.

*State Farm* involved resolving the issue of whether the definition of "accident" in am insurance policy should include only accidental events or cover injuries or damages that are merely unexpected or unintended.  720 So. 2 at 1074.  The term "accident" in the *State Farm* contractor's policy was not defined and the policy contained a policy exclusion precluding coverage for damage "expected or intended from the standpoint of the insured." *Id.* at 1073.  Citing the aforementioned rule of construction, the Florida Supreme Court reasoned that "[r]eading the coverage provision of the policy together with the exclusionary clause could support a conclusion that coverage is provided in the State Farm policy for occurrences where the insured did not intend or expect to cause harm to the third party." *Id.* at 1075.

The Court finds no reason to apply this rule of construction here.  The abuse or molestation provision is self-contained within American Empire's policy and divining its meaning does not require reading any other provision.  Indeed, rather than argue that a favorable interpretation of the abuse or molestation exclusion can be found by reading the policy in *pari materia*, the Does seem to cite the rule to say that the Court should read the entire exclusion together.  The Court has already done so, construing the exclusion according to its plain language (*see supra* at **10-11**), and does not come to a different result here.

Finally, exclusionary language must be construed most strongly against the insurer. *Stuyvesant Insurance Company v. Butler,* 314 So.2d 567 (Fla. 1975) and any

ambiguity should be resolved against the insurer. *Daleo v. Bert and Bette Bayfront Marine*, 273 So.2d 113 (Fla. 3d DCA 1972).  However, "strict construction is required of exclusionary clauses in insurance contracts only in the sense that the insurer is required to make clear precisely what is excluded from coverage."   *State Farm Fire & Cas. Ins. Co. v. Deni Assoc. of Florida, Inc.*, 678 So. 2d 397, 401 (Fla. 4th DCA 1996).  It "does not mean that a court must always find coverage . . . [or] that clear words may be tortured into uncertainty so that new meanings can be added." *Id.*  Similarly, "only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite." *Pridgen*, 498 So. 2d at 1248 (citation omitted). Because the Court has already found the language of the abuse and molestation exclusion to be unambiguous, these rules are unhelpful to the Does' cause.

Thus, the Court finds that the abuse or molestation exclusion bars coverage under the American Empire policy for the Does' claims against Chabad House.

### B.     The Designated Premises Endorsement Creates Ambiguity and Must Be Construed in Favor of Insured

This Court must also determine whether the designated premises endorsement bars coverage under the policy for acts which undisputedly occurred away from Chabad House.  Without question, the policy at issue is titled a "Commercial General Liability Policy."  (*See* Policy at 1, D.E. 36-2.)[9]  Its coverage territory is the United States, Canada, Puerto Rico and, under certain circumstances, other parts of the world.  (*See* Policy at 5, D.E. 36-3.)  However, the Limitation of Coverage to Designated Premises or Project states: "This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part."  (Policy at 5, D.E. 36-2.)  It goes on to limit coverage to "'bodily injury', 'property damage', 'personal and advertising injury' and medical expenses arising out of: (1) The ownership, maintenance or use of the premises shown in the Schedule [21001 Biscayne Blvd, Aventura, FL 33180] and operations necessary or incidental to those premises." (*Id.*)

As in *Union American*, the Limitation of Coverage to Designated Premises or Project attempts to convert a general liability policy to a premises or owner's, landlord's and tenant's policy. *See* 858 So. 2d at 1078, n.1.  However, unlike the policy in *Union American*, here the application of the designated premises endorsement is not so clear cut.

---

[9]     Plaintiff attaches the Policy is attached as multiple exhibits in support of its Motion for Summary Judgment.  To avoid confusion, the Court will cite the page and docket entry of the relevant provisions.

First and most problematic, the Limitation of Coverage to Designated Premises or Project does not state specifically which Commercial General Liability Coverage Part is modifies.  (*Compare* Policy at 5, D.E. 36-2, and Policy at 7 (Exclusion - Absolute Asbestos), D.E. 36-2, *with* Policy at 10 (Exclusion - Mold, Spores or Fungus), D.E. 36-2, and *Union American*, 858 So. 2d at 1077.)  For such an ambitious undertaking – the conversion of a general liability policy to a premises liability policy – the designated premises endorsement must be clear and unequivocal.  *Cf. Parliament Ins. Co. v. Bryant*, 380 So. 2d 1088, 1089 (Fla. 3d DCA 1980) (no coverage for an accident occurring away from the insured's premises where a designated premises endorsement and additional, clear, exclusionary language were written into the policy); *American Guar. and Liability Ins. Co. v. The 1906 Co.*, 129 F.3d 802, 806 (5th Cir. 1997) (designated premises endorsement, specifically incorporated into the policy on the declarations page, put insured on notice that coverage was limited to certain premises).  Here, no table of contents, schedule of exclusions or other references to the designated premises endorsement exist within the policy. *See, e.g., American Guar.*, 129 F.3d at 806.   In the presence of policy language to the contrary (*e.g.* designated coverage territory), the designated premises endorsement's lack of clarity its remarkable.

Second, the Does are correct in pointing out presence of contradicting language in the policy.  The existence of a coverage territory and coverage for "advertising injury," a tort not tied to the premises, within the policy and endorsement itself creates sufficient confusion.  *Compare Southeast Farms*, 714 So. 2d at 512 (coverage for "advertising

15

injury" in policy and premises endorsement) *with Union American*, 858 So. 2d 1076 (no mention of a coverage territory being modified by a designated premises endorsement or possible coverage for non-premises-related injuries). As in *Southeast Farms*, the ambiguities resulting from the arguably untethered designated premises endorsement and the contradicting language elsewhere in the policy must be construed against the insurer. 714 So. 2d at 512; *see Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fla. 5th DCA 1994) (ambiguous policy language is generally construed against the insurer).[10] The Court finds that the designated premises endorsement does not bar coverage of the Does' state court claims against Chabad House.

### III.    Conclusion

Because the Does' negligence claims against Chabad House are precluded by the abuse or molestation exclusion, American Empire is not obligated to defend the Does' underlying suit. *See Federal Ins. Co. v. Applestein*, 377 So. 2d 229, 231 (Fla. 3d DCA 1979) (the non-existence of coverage or applicability of a policy exclusion removes all obligation from the insurer to defend the action against insured). Accordingly, American Empire is entitled to declaratory judgment that it has no duty to defend or indemnify

---

[10] The parties dispute the import of the insurer's concession in *Southeast Farms* that "'premises' includes the business operated on the premises." 714 So. 2d at 512. The Court considers this concession distinguishable from the instant case and only part of the basis for the *Southeast Farms* court's finding that the policy at issue was a general commercial policy. *See id.*

Chabad House in the state court action. Consistent with the foregoing, it is **ORDERED AND ADJUDGED** that:

1. The Report and Recommendation of Magistrate Judge Jonathan Goodman (D.E. 50), issued on October 4, 2010, is **ADOPTED in part and OVERRULED in part**.

2. Plaintiff American Empire Surplus Lines Insurance Company's Motion for Summary Judgment (D.E. 36), filed on August 4, 2010, is **GRANTED**.

3. Declaratory Judgment is entered in favor of Plaintiff American Empire Surplus Lines Insurance against Defendants Chabad House of North Dade, Inc., John and Jane Doe.

4. This Case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of March, 2011.

                                                          **JOAN A. LENARD**
                                                        **UNITED STATES DISTRICT JUDGE**